NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3189
_____

NEW MILFORD BOARD OF EDUCATION,

Appellant

v.

C. R., on behalf of T.R.; T. R.
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cv-00328)
District Judge:  Honorable Jose L. Linares
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 24, 2011

Before:  FUENTES, FISHER and NYGAARD, *Circuit Judges*.

(Filed: June 14, 2011)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.


The New Milford Board of Education ("Board") appeals from an order of the

United States District Court for the District of New Jersey granting T.R., a minor child,

and his parents summary judgment on the administrative record, after finding that the

Board failed to provide T.R. with a free appropriate public education ("FAPE") for the 2006-07 and 2007-08 school years. For the reasons stated below, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

The claims at issue arise under the Individuals with Disabilities in Education Act ("IDEA"), which ensures that children with disabilities have access to a FAPE. 20 U.S.C. § 1412(a)(1). As part of the obligation to provide a FAPE, school districts receiving federal funding must design and implement an Individualized Education Plan ("IEP") for each student with a disability. 20 U.S.C. § 1414(d)(2)(A). The IEP must contain "a specific statement of a student's present abilities, goals for improvement, services designed to meet those goals, and a timetable for reaching the goals via the services." *Susan N. v. Wilson Sch. Dist.*, 70 F.3d 751, 756 (3d Cir. 1995).

T.R. is a minor child diagnosed with autism. The Board has been preparing IEPs for T.R.'s education since he was approximately three and a half years old. Pursuant to these IEPs, T.R. attends the Institute for Educational Achievement ("IEA"), a school that specializes in the education of students with autism, utilizing applied behavior analysis methodologies and techniques. T.R.'s parents also provided him with certain in-home education, which was partially reimbursed by the Board. The Board's reimbursement for the in-home education effectively ended in 2006. Specifically, T.R.'s 2006-07 IEP

2

provided for only one home visit per week from an IEA staff member, and the 2007-2008 IEP provided for two home visits per month by an IEA staff member.[1] T.R.'s parents continued to provide two hours of nightly in-home education at their own expense.

In 2007, T.R. and his parents filed an administrative complaint for due process against the Board, alleging that T.R.'s IEPs for 2006-07 and 2007-08 failed to provide him with a FAPE. Specifically, they sought reimbursement for the in-home services they procured for T.R. since November 1, 2006, asserting that an appropriate IEP requires substantial in-home instruction to curb T.R.'s aggression and self-stimulation. The matter was heard by an Administrative Law Judge ("ALJ") over the course of four days in January and February of 2008.

At the ALJ hearing, both parties presented various witnesses, including expert testimonies and reports of T.R.'s behavior and progress, and recommendations for his future education. The testimony indicated that T.R. has been found to exhibit aggressive behaviors, such as shoving and making inappropriate noises. His parents contend that he becomes aggressive when frustrated with an academic task or when he has trouble communicating, and that he would often act out in this manner in order to avoid tasks set for him at school. Both parties agreed that these behaviors interfered with his ability to participate in the established IEPs, but disagree to what extent they interfered.

—————————————

[1] This reduced T.R.'s in-home education to the minimum required by the IEA.

One of the primary exhibits relied upon by T.R. and his parents consisted of a six-page assessment report ("Report") prepared by Dr. Jo Ann Delgado, the supervisor of T.R.'s parent-provided home program. The Board objected to the admission of the Report into the record as untimely because it was submitted only four days before the scheduled hearing. *See* N.J.A.C. 1:6A-10.1(c) ("[T]he judge shall exclude any evidence at hearing that has not been disclosed to that party at least five business days before the hearing, unless the judge determines that the evidence could not reasonably have been disclosed within that time."). T.R. and his parents explained that they submitted the Report the day that it was completed, and that therefore the Board suffered no prejudice from the delay. The ALJ overruled the Board's objection and admitted the Report into evidence.

At the conclusion of the hearing, the ALJ found the testimony of the Board's primary witnesses not to be credible, explaining they were either incomplete or were not based on a sufficient amount of observation of T.R. On the other hand, the ALJ found credible the reports and observations of T.R.'s witnesses, including Dr. Delgado, and relied upon these testimonies in reaching its decision. It ultimately found that an after-school program was required in order to provide T.R. with a FAPE.

On June 21, 2010, the District Court affirmed the ALJ's decision, granting summary judgment in favor of T.R. and his parents, and denying the Board's cross-motion for summary judgment. It held that T.R. required an after-school program to

4

receive a FAPE.  It also held that the ALJ properly admitted Dr. Delgado's Report into the record.  The Board timely appealed.

## II.

The District Court had jurisdiction over this matter pursuant to 20 U.S.C. § 1415(i)(2).  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.  We review a district court's finding of fact for clear error, but we exercise plenary review over the legal conclusions and legal standards the District Court applies.  *D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010).

## III.

The Board advances three arguments on appeal:  (1) the District Court and the ALJ misapplied the relevant legal standards in assessing the Board's FAPE obligations; (2) the overall decisions of the District Court and the ALJ were not supported by the weight of the evidence; and (3) the ALJ erred in admitting Dr. Delgado's untimely Report, and the District Court erred in affirming that decision.  We address each argument in turn.

## A.

First, the Board argues that the District Court applied the incorrect legal standard in reviewing the ALJ's decision.  Specifically, the Board argues that the District Court should have applied the legal standard set forth in *Thompson R2-J School District v. Luke P.*, 540 F.3d 1143, 1150 (10th Cir. 2008), which stands for the proposition that a student's failure to generalize certain skills learned in school to the home environment is

5

an insufficient basis for concluding that a school district was not providing a child with a FAPE.

This argument mischaracterizes the ALJ's underlying determination, which was not based on a legal standard requiring generalization of skills. While the ALJ noted that T.R.'s IEP did not provide training of "essential skills required for [him] to function satisfactor[ily] at home and within his community," app. at 34, it also noted that "learning to communicate effectively would enhance T.R.'s basic *academic* skills and improve his ability to manage himself." (*Id*. at 35) (emphasis added). Therefore, the ALJ found that "home programming [was] needed to allow T.R. to benefit from his education." (*Id*.) It did not rest its decision squarely on T.R.'s failure to generalize skills.

Moreover, the District Court articulated and applied the correct legal standard under our binding precedent. "At a minimum, '[t]he IEP must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" *D.S.*, 602 F.3d at 557. T.R.'s IEP was inadequate because the "complementary nature of the home program was required for [him] to receive the meaningful educational benefit mandated by the IDEA." *New Milford Bd. of Educ. v. C.R.*, 2010 WL 2571343, at *6 (D.N.J. June 22, 2010). If a mentally disabled child continuously presents an adverse behavior that genuinely interferes with his ability to garner any real benefit from the education provided and the IEP does not adequately remedy this behavior, it stands to reason that the school district has failed to provide even a "basic floor of opportunity," much less the meaningful benefit required by our Court.

6

*D.S.*, 602 F.3d at 557. Here, the record included substantial evidence that T.R.'s behaviors were not only detrimental to his home life, but also interfered with his learning. For example, T.R.'s aggressive behavior resulted in his avoidance of educational tasks during his IEP program. For this reason, we agree that T.R. did not receive the meaningful educational benefit required by the IDEA.

B.

Second, the Board argues that the weight of the evidence does not support the overall decisions of the District Court and the ALJ. Specifically, the Board claims that the factual findings and credibility determinations of the ALJ were incorrect and the District Court clearly erred by affirming its factual findings. This argument is without merit.

"When considering an appeal from a state administrative decision under the IDEA, district courts apply a nontraditional standard of review, sometimes referred to as 'modified de novo' review." *D.S.*, 602 F.3d at 564. Under this standard, a district court must accord "'due weight' and deference" to the administrative findings and give the ALJ's factual findings the benefit of prima facie correctness. *Id.* Additionally, any testimony and credibility determinations must carry special weight and may only be disturbed if "the non-testimonial, extrinsic evidence in the record would justify a contrary

conclusion."[2] *Id.* (quoting *Shore Reg'l High Sch. Bd. of Educ. v. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (emphasis removed)).

The District Court properly afforded due deference to the ALJ's factual findings. In issuing its decision, the ALJ gave thorough summaries of witness testimony and made well-reasoned credibility determinations. (App. at 21); *c.f. Fargnoli v. Massanari,* 247 F.3d 34 (3d Cir. 2001) (reversing ALJ's decision where factual findings were not justified or supported in its decision). The Board has not supplied sufficient non-testimonial extrinsic evidence to disturb the ALJ's credibility findings. Accordingly, the weight of the evidence supports the ALJ's decision, and the District Court did not clearly err by affirming its factual findings.

C.

In its third and final argument, the Board argues that the District Court erred in affirming the ALJ's decision to allow late submission of Dr. Delgado's Report into the

---

[2] The Board also argues that *Carlisle Area School. v. Scott P.*, 62 F.3d 520, 529 (3d Cir. 1995), sets forth an alternative test under which a district court may disturb an ALJ's factual findings. Specifically, the Board argues that *Carlisle* stands for the proposition that a district court may overturn an administrative decision either where "non-testimonial, extrinsic evidence in the record would justify a contrary conclusion *or [where] the record read in its entirety would compel a contrary conclusion.*" *Id.* at 529 (emphasis added). The Board asserts that the latter part of this statement created a second, more relaxed, and fully independent basis for diverging from the fact and credibility findings of an ALJ based on testimonial evidence. The Board is mistaken in this assertion. Where a district court reviews an administrative fact finder in the first instance, it is required to defer to the ALJ's factual findings unless it can point to non-testimonial extrinsic evidence on the record that justifies a contrary conclusion. *S.H. v. State-Operated Sch. Dist.*, 336 F.3d 260, 270 (3d Cir. 2003).

record.  We conclude that the ALJ's decision to permit this evidence was reasonable and supported by the record.  Pursuant to the language of N.J.A.C. 1:6A-10.1(c), a judge may exercise discretion to permit the submission of evidence past the five-day deadline if he or she finds that the evidence could not reasonably have been disclosed within that time frame.  It can be reasonably inferred from the record that the ALJ found the explanations provided by T.R. and his parents regarding the late disclosure of the Report meritorious. We find nothing to justify disturbing this exercise of discretion.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

9